NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1626                                    Appeals Court

EARLINE SULLIVAN  vs.  CRAIG S. SMITH.

No. 15-P-1626.

Hampden.     September 20, 2016. - December 16, 2016.

Present:  Meade, Carhart, & Kinder, JJ.

Parent and Child, Child support.  Probate Court, General equity
     power, Notice.  Jurisdiction, Equitable.  Uniform
     Interstate Family Support Act.  Jurisdiction, Personal.
     Due Process of Law, Jurisdiction over nonresident.
     Practice, Civil, Service of process.  Notice.

Complaint in equity filed in the Hampden Division of the
Probate and Family Court Department on November 12, 2014.

Judgment was entered by David G. Sacks, J.; a motion for
postjudgment relief, filed on July 31, 2015, was considered by
him; a motion to dismiss, filed on September 3, 2015, was heard
by him; and a corrected order lifting a stay on child support
payments was entered by him.

Ann E. Dargie for the defendant.

KINDER, J.  Craig S. Smith (Smith or father), a Georgia

resident, appeals from a judgment and orders of the Probate and

Family Court ordering him to pay postminority child support to

Earline Sullivan (Sullivan or guardian), the former guardian of
Smith's unemancipated eighteen year old son.  On appeal, Smith
argues that the Probate and Family Court lacked personal
jurisdiction over him, and that the judgment is therefore void.
He also challenges the sufficiency of both service of the
complaint and notice of the hearing at which the judgment
entered.  We affirm, concluding that the long-arm provisions of
the Uniform Interstate Family Support Act (UIFSA), G. L.
c. 209D, § 2-201,[1] provide personal jurisdiction over Smith, that
service of process was sufficient, and that he had adequate
notice of the hearing.

Background.  We summarize the relevant factual and
procedural history from the undisputed facts set forth in the
judge's orders, as well as the verified complaint and the
relevant dockets.  See Eccleston v. Bankosky, 438 Mass. 428, 429
(2003).  See also Brookline v. Goldstein, 388 Mass. 443, 447
(1983) (both trial judge and appellate court may take judicial
notice of court records in related action); Jarosz v. Palmer,
436 Mass. 526, 530 (2002).

Smith is the father of a son born on July 13, 1996.  Smith
acknowledged paternity in an action brought first by the mother

---

[1] Throughout our discussion, we refer to the provisions of
UIFSA as in effect before its repeal and replacement by St.
2016, c. 53, § 1.

pursuant to G. L. c. 209C, and later by the Department of Revenue pursuant to G. L. c. 119A and G. L. c. 209C. Smith was ordered to pay support, and, at his request, was awarded visitation rights. Sullivan, the maternal grandmother, was appointed the child's guardian on February 11, 2004, after the death of the mother. Smith appeared voluntarily and was ordered to pay the guardian $118.75 each week by wage assignment beginning February 13, 2004. That support order terminated on July 13, 2014, when Smith's son reached eighteen years of age. See G. L. c. 190B, § 5-210; Eccleston, 438 Mass. at 429.

Sullivan and the child are residents of Massachusetts. Smith was a resident of Connecticut at the time the paternity and guardianship proceedings were initiated, and has since moved to Georgia, where he has resided at all other times material to this appeal. He has never been a resident of or domiciled in Massachusetts.

One month before the guardianship terminated, Sullivan filed petitions to extend the child support obligation under both the paternity action and the guardianship action. Smith's son was scheduled to enter his final year of high school in the fall of 2014, and planned to attend college in the fall of 2015. The judge dismissed the petitions without prejudice to refiling as a complaint in equity. See Eccleston, supra.

The guardian filed a "Complaint in Equity for Child Support of Unemancipated Child Previously Under Guardianship" on November 12, 2014. After several attempts to make service at Smith's home,[2] the Georgia sheriff executed a return of service on December 12, 2014, stating that service was not made.[3] The guardian then moved for authority to make service by mail and publication. The motion was allowed, and the guardian made proper service by publication on April 2, 9, 16, and 23, 2015.[4] See G. L. c. 227, § 7; Mass.R.Civ.P. 4(d), as amended, 370 Mass. 918 (1976); Mass.R.Civ.P. 4(e)(1) and (f), 365 Mass. 733 (1974).

---

[2] Sullivan's verified complaint sets forth Smith's address in Snellville, Georgia. In his verified concise statement of facts and law, Smith does not dispute the accuracy of the address.

[3] Although both the Massachusetts Rules of Civil Procedure and Georgia statutes permit service on an out-of-State defendant by leaving copies of process at the defendant's last and usual place of abode, the sheriff did not make service in this manner. See Mass.R.Civ.P. 4(d), as amended, 370 Mass. 918 (1976); Mass.R.Civ.P. 4(e)(1), (2), 365 Mass. 733 (1974); Christian Book Distributors, Inc. v. Wallace, 53 Mass. App. Ct. 905, 905-906 (2001). Compare Ga. Code Ann. § 9-11-4(e)(7) (permitting service on in-State defendant "personally, or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion residing therein" or by delivery to an authorized agent).

[4] The record shows that the equity complaint was served by registered/certified mail, but does not contain a signed receipt. In the absence of a receipt, there is no proof of service by mail in the record, and service by publication is the form of service upon which we rely. See Mass.R.Civ.P. 4(f), 365 Mass. 733 (1974).

No answer was filed within the sixty-day period specified in the order for service by publication.

The Probate and Family Court scheduled a case management conference for August 7, 2015. Sullivan sought a continuance, and the court scheduled a hearing on her motion to continue for July 21, 2015. Smith admits he received notice of the August 7 case management conference. The motion to continue included the date of the hearing on that motion (July 21, 2015), and was accompanied by a certificate of service to Smith by mail.

The time in which to answer passed, and the judge, seeing no answer in the file, consolidated the motion to continue with the case management conference. See Probate and Family Court Standing Order 1-06, par. 2(g) (2006). On July 21, 2015, judgment entered against Smith, ordering him to pay $250 per week in child support so long as the "child remains domiciled with a[nd] principally dependent upon . . . [his former guardian], to otherwise terminate at age 23, . . . unless the child . . . shall earlier receive an undergraduate degree, or terminate undergraduate studies." See Probate and Family Court Standing Order 1-06, par. 4(b)(6) (2006).

Upon receipt of the judgment, Smith first moved for relief from judgment pursuant to Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974), on the grounds that Sullivan failed to perfect service of the complaint, and that he did not receive notice of the July

21 hearing. The motion was denied on August 12, 2015, but, "in the interest of justice," the judge scheduled a hearing for September 22, 2015, to determine whether the amount of child support ordered in the judgment should be modified, and ordered Smith to present a current financial statement and the child support guidelines worksheet. Some three weeks before the scheduled hearing date, Smith filed a "motion to dismiss" pursuant to Mass.R.Civ.P. 12(b)(2), 365 Mass. 754 (1974), for lack of personal jurisdiction.[5] After a hearing on September 21, 2015, the judge denied the motion, but suspended any obligation to pay child support, and set a new date by which Smith's financial statement and child support guidelines worksheet were due. The judge set a further hearing date of October 27, 2015, on the sole question of the amount of Smith's child support obligation. Smith failed to file the financial statement and child support guidelines worksheet and, in a corrected order dated October 27, 2015, the judge lifted the stay on child support payments and allowed the judgment to stand with no modification. Smith appeals from the judgment and the postjudgment orders.

---

[5] Because the motion was filed after judgment had entered, the judge treated it as a rule 60(b)(4) motion. Mass.R.Civ.P. 60(b)(4), 365 Mass. 828 (1974).

Discussion. 1. Personal jurisdiction. Because Smith raised the issue of personal jurisdiction after the entry of judgment, the judge properly treated his motion as one for relief from judgment pursuant to Mass.R.Civ.P. 60(b)(4). See I.S.H. v. M.D.B., 83 Mass. App. Ct. 553, 557 (2013). "A motion for relief from judgment pursuant to . . . [rule] 60(b)(4) . . . seeks to set aside a final judgment on the basis that it is void. A judgment is void if the court from which it issues lacked jurisdiction over the parties." Ibid. (quotation omitted). We review the question of personal jurisdiction de novo. See Colley v. Benson, Young & Downs Ins. Agency, Inc., 42 Mass. App. Ct. 527, 533 (1997).

"In order for a court to exercise personal jurisdiction over a defendant, the assertion of jurisdiction must be both authorized by statute and consistent with due process." I.S.H. v. M.D.B., 83 Mass. App. Ct. at 561, citing Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). The judge predicated his ruling regarding personal jurisdiction on the long-arm statute, G. L. c. 223A, § 3(h), as amended through St. 1993, c. 460, § 86, which provides in pertinent part:

> "Section 3. A court may exercise personal jurisdiction
> over a person, who acts directly or by an agent, as to a
> cause of action in law or equity arising from the person's
>
> . . .

> "(h) having been subject to the exercise of personal jurisdiction of a court of the commonwealth which has resulted in an order of alimony, custody, child support or property settlement, notwithstanding the subsequent departure of one of the original parties from the commonwealth, if the action involves modification of such order or orders and the moving party resides in the commonwealth, or if the action involves enforcement of such order notwithstanding the domicile of the moving party" (emphasis added).

Smith entered a general appearance in both the paternity and guardianship actions, resulting in, among other things, an order of child support. However, Smith contends that there is no long-arm jurisdiction under G. L. c. 223A, § 3(h), because the complaint in equity is an independent action, and does not involve either modification or enforcement of a prior order. The judge construed the term "modification" broadly to reach the separate action, ruling that any other construction of the term would deprive unemancipated children who have reached the age of majority, but who live with a former guardian, of the equal protection of the law. We agree that there is personal jurisdiction over the father, but arrive at that conclusion for a different reason. We conclude that G. L. c. 223A, § 3(h), does not provide jurisdiction over the father, but UIFSA does.

Unemancipated children born out of wedlock who have reached the age of majority, but do not reside with a parent, fall into a gap in the statutory scheme; that scheme is intended to provide such children with "the same rights and protections of

the law as all other children." G. L. c. 209C, § 1, inserted by St. 1986, c. 310, § 16. See Eccleston, 438 Mass. at 429. Neither the support provisions of the divorce statute, G. L. c. 208, § 28, nor the paternity statute, G. L. c. 209C, § 9, provide for postminority support to a child who does not reside with a parent. Eccleston, supra at 435-437. Unlike children who have "aged out" of foster care, for whom there is explicit statutory authorization to provide postminority support, see G. L. c. 119, § 23(f), there is no statutory mechanism to provide child support to a former guardian once a dependent child reaches the age of eighteen and the guardianship terminates. Eccleston, supra at 436-437. See G. L. c. 190B, § 5-209 (allowing award of support to guardian); G. L. c. 190B, § 5-210 (terminating guardianship when child reaches age of majority). In Eccleston, the guardian of a child residing with her sought continuing child support once the child reached age eighteen.[6] The Supreme Judicial Court, "act[ing] to close [the] unintended gap" in the statutory scheme, held that the general equity jurisdiction of the Probate and Family Court, conferred by statute, is "broad enough to permit a judge to impose a postminority support order on the child's financially able noncustodial parent or parents." Id. at 437. In invoking the

---

[6] There was no issue as to long-arm jurisdiction in Eccleston; there, the father/obligor resided in Massachusetts.

Probate and Family Court's general equity jurisdiction, however, the Supreme Judicial Court explicitly rejected the notion that an award of postminority support for a dependent "adult" child residing with a guardian could be made in a modification proceeding pursuant to G. L. c. 208, § 28.  Eccleston, supra at 433.

The same reasoning applies here.  As in the case of a child of divorce, the paternity statute permits postminority support payments only to a child "who is domiciled in the home of a parent and is principally dependent upon said parent for maintenance."  G. L. c. 209C, § 9(a), as amended through St. 1996, c. 199.  See Eccleston, supra at 436-437.  Sullivan was not the child's "parent," the child was not "domiciled in the home of a parent," and no modification of the support order in the guardianship could be made once the child reached the age of eighteen.  Thus, the present matter does not come within the provisions of our long-arm statute, G. L. c. 223A, § 3(h), applying to actions involving the "modification" of child support orders.

It is equally clear, however, that the Legislature intended to give broad reach to the jurisdictional components of the interrelated statutes governing the support of children.  In addition to amendments extending the jurisdictional reach of

G. L. c. 223A, § 3,[7] the Legislature enacted UIFSA in 1995, extending personal jurisdiction in interstate support proceedings to the full limit of the Federal and State constitutions.  G. L. c. 209D, § 2-201(8).

UIFSA applies not only to minors, but also to children who have reached the age of majority but who are in need of support from a parent.  See G. L. c. 209D, § 1-101(1) (definition of "Child").  Here, the Probate and Family Court had continuing, exclusive jurisdiction over the equity complaint seeking support, as it had issued an order of support and was the State of residence of the child and the former guardian.  See G. L. c. 209D, § 2-205(a)(1); Cohen v. Cohen, 470 Mass. 708, 713-714 (2015) ("Under UIFSA, once one court enters a support order, no other court may modify that order for as long as the obligee, obligor, or child for whose benefit the order is entered continues to reside within the jurisdiction of that court unless each party consents in writing to another jurisdiction" [quotation omitted]).[8]

The Probate and Family Court had personal jurisdiction over the father under § 2-201(7) and (8) of UIFSA.  Section 2-201(7)

---

[7] See St. 1987, c. 100 (inserting § 3[h]); St. 1993, c. 460, § 86 (amending § 3[h]).

[8] No other tribunal of any other State has issued a support order in this matter.  See G. L. c. 209D, § 2-205(b-d).

extends jurisdiction over "the individual [defendant who] asserted parentage under the provisions of chapter forty-six or chapter two hundred and nine C."  G. L. c. 209D, § 2-201(7).  The father asserted parentage in the paternity proceeding brought pursuant to G. L. c. 209C.  He voluntarily appeared through counsel and filed an answer to the complaint in the paternity action in which he acknowledged that he was the father, requested parenting time, and sought permission to declare the child as a dependent on his taxes.  He sought to enforce his parenting time by both motion and a complaint for contempt.  Section 2-201(7) of UIFSA constitutes the requisite statutory "authorization" for the exercise of jurisdiction.  See I.S.H. v. M.D.B., 83 Mass. App. Ct. at 561 ("[T]he assertion of [personal] jurisdiction must be . . . authorized by statute").  The exercise of jurisdiction pursuant to § 2-201(7) comports with due process because the father "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Windsor v. Windsor, 45 Mass. App. Ct. 650, 652 (1998), quoting from Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Section 2-201(8) of UIFSA, the catchall provision, provides a separate and independent statutory basis for asserting personal jurisdiction in the forum State.  It extends personal jurisdiction on "any other basis consistent with the

constitutions of the commonwealth and the United States for the exercise of personal jurisdiction."  G. L. c. 209D, § 2-201(8).  The question here is whether, having obtained jurisdiction over the father and having issued a valid order of support, the Probate and Family Court retained personal jurisdiction over him once the child, though unemancipated, reached the age of majority.  We conclude that it did.  Once a forum State acquires personal jurisdiction over a party, it retains continuing jurisdiction "throughout all subsequent proceedings which arise out of the original claim."  Restatement (Second) of Conflict of Laws § 26 (1988 rev.).  See Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 454-455 (1932).  Cf. Heider v. Heider, 34 Mass. App. Ct. 634, 635-636 (1993) (General Laws c. 223A, § 3[h], dispels any doubt that Probate and Family Court has continuing personal jurisdiction to modify and enforce its support orders).[9]

The touchstone of due process in this context is fairness to the defendant.  See Kulko v. Superior Ct., 436 U.S. 84, 91 (1978) (due process requires "sufficient connection between the

---

[9] Smith's argument that the jurisdictional provisions of UIFSA do not apply because UIFSA was not specifically pleaded in the Family and Probate Court is unavailing.  Nothing in G. L. c. 209D limits application of its jurisdictional language to cases in which it has been pleaded.  We may affirm a judgment on any proper ground where, as in this case, it is apparent on the record.  See Richardson v. Board of Appeals of Chilmark, 81 Mass. App. Ct. 912, 913-914 (2012).

defendant and the forum State to make it fair to require defense of the action"); Restatement, supra at § 26 comment a. In evaluating fairness, we look to the nature of the relationship between the original claim and the newly asserted claim. Restatement, supra at § 26 comment d. The claim of support here is the same as the claim for support made in the guardianship and paternity proceedings. The only reason for the separate equity action is the gap in the statutory scheme. In every other sense, the judgment ordering child support here derives from the support orders previously entered. Because this action arises directly out of the two previous cases (the paternity and guardianship proceedings), the exercise of personal jurisdiction (under § 2-201[7], [8] of UIFSA) comports with notions of "fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).[10]

---

[10] Cases from other jurisdictions support this view. See McCaffery v. Green, 931 P.2d 407, 413 (Alaska 1997) (Alaska courts had jurisdiction over complaint for support where nonresident father was already before court on custody and visitation proceedings brought under Uniform Child Custody Jurisdiction Act). See also Glading v. Furman, 282 Md. 200 (1978) (where court had issued divorce decree that was silent on issue of child support, court had continuing personal jurisdiction over nonresident ex-husband on petition for child support). Compare Hornblower v. Hornblower, 151 Conn. App. 332, 339-340 (2014) ("To conclude that a party can simply move out of state to avoid a modification of a spousal support order would frustrate the intent of UIFSA and its related jurisdictional provisions"); McAleavy v. McAleavy, 150 Wis. 2d 26, 34 (1989) (court had continuing personal jurisdiction over nonresident in

2.  <u>Service and notice</u>.  Although personal jurisdiction is continuous, due process requires that defendants be given notice and an opportunity to be heard.  See Restatement, <u>supra</u> at § 26, Reporters' Note to comment f, citing <u>Griffin</u> v. <u>Griffin</u>, 327 U.S. 220 (1946).  Smith claims that the trial judge abused his discretion in denying the motion for relief from judgment because service was insufficient, and he did not have notice of the hearing at which judgment was entered.  We disagree.

a.  <u>Service</u>.  First, Smith argues that Sullivan failed to perfect service within ninety days of the filing of the complaint because she did not file her motion for service by publication until February 12, 2015, ninety-two days after the complaint was filed.  As a result, Smith claims the case should have been dismissed automatically "upon the court's own initiative."  Mass.R.Civ.P. 4(j), as appearing in 402 Mass. 1401 (1988).

Rule 4(j) is not a rule of mandatory dismissal.  See <u>Shuman</u> v. <u>Stanley Works</u>, 30 Mass. App. Ct. 951, 953 (1991).  It provides for dismissal where the plaintiff "cannot show good cause why such service was not made within [the ninety-day] period."  Rule 4(j), <u>supra</u>.  Here, the record demonstrates a diligent effort to serve notice on Smith.  The judge's order

separate complaint for modification of divorce judgment as to spousal maintenance).

denying Smith's motion to dismiss explicitly recognized the judge's discretion to extend the time for service. This constituted an implicit, if not explicit, finding of good cause. Smith has shown neither "a good reason to remove the default [nor] the existence of meritorious claims or defenses." Clamp-All Corp. v. Foresta, 53 Mass. App. Ct. 795, 806 (2002).

b. Notice. Smith's contention that his rule 60(b) motion should have been allowed because he did not receive notice of the hearing at which the judge entered the judgment is equally unavailing. Even if we accept his claim that he did not receive a copy of the motion to continue, Smith gambled at his peril when, having been served with notice by publication of the complaint, and having received notice of the case management conference, he did nothing. The "information was certainly sufficient to put [Smith] on notice, for '[n]otice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop.'" Commonwealth v. Delaney, 425 Mass. 587, 592 (1997), quoting from Commonwealth v. Olivo, 369 Mass. 62, 69 (1975). Commonwealth v. Henderson, 434 Mass. 155, 162 (2001). Here, Smith failed to answer the complaint or file a responsive pleading within the sixty-day period allotted, and failed to apprise himself of the docket and the applicable probate court orders. In these circumstances,

under Probate Court Standing Order 1-06, the judge was authorized to consolidate the case management conference with the hearing on the merits.  In short, the judge did not abuse his discretion by entering judgment, where Smith had failed to answer or appear.  See Atlas Elevator Co. v. Stasinos, 4 Mass. App. Ct. 285, 288 (1976).

Conclusion.  The judgment is affirmed.  The orders dated August 12, 2015, and September 21, 2015, on the postjudgment motions, and the corrected order dated October 27, 2015, are affirmed.

So ordered.